**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN NAGLE CO.,**

                                **Plaintiff,**

          **vs.**                                                              **1:16-CV-102**
                                                                                    **(MAD/CFH)**
**DAVID N. GOLDIN,**

                                **Defendant.**

_____

**DAVID N. GOLDIN,**

                           **Third Party Plaintiff,**

          **vs.**

**BRIAN OLMSTEAD; DOUGLAS ROSE; and**
**TULLY RINCKEY, PLLC,**

                           **Third Party Defendants.**

_____

**DOUGLAS ROSE,**

                           **Cross Claimant,**

          **vs.**

**BRIAN OLMSTEAD and TULLY RINCKEY, PLLC,**

                           **Cross Defendants.**

_____

**TULLY RINCKEY, PLLC,**

                           **Cross Claimant,**

          **vs.**

**DAVID N. GOLDIN and BRIAN OLMSTEAD,**

                           **Cross Defendants.**

_____

**APPEARANCES:**                                              **OF COUNSEL:**

**OFFICE OF FRANK M. PUTORTI, JR.**          **FRANK M. PUTORTI, JR., ESQ.**
1338 Union Street
Schenectady, New York 12308-3008
Attorneys for Plaintiff John Nagle Co.

**BARCLAY DAMON LLP**          **JONATHAN H. BARD, ESQ.**
80 State Street          **THOMAS B. CRONMILLER, ESQ.**
Albany, New York 12207
Attorneys for Defendant/Third Party
Plaintiff David N. Goldin

**BRIAN OLMSTEAD**
2 Summer Street
Nahant, Massachusetts 01908
*Pro se* Third Party Defendant/Cross
Defendant

**COHEN KINNE VALICENTI &**          **DAVID E. VALICENTI, ESQ.**
**COOK, LLP**
28 North Street
3rd Floor
Pittsfield, Massachusetts 01201
Attorneys for Third Party Defendant/Cross
Claimant Douglas Rose

**SMITH, SOVIK, KENDRICK &**          **KEVIN E. HULSLANDER, ESQ.**
**SUGNET, P.C.**
250 South Clinton Street, Suite 600
Syracuse, New York 13202-1252
Attorneys for Third Party Defendant/Cross
Claimant/Cross Defendant Tully Rinckey

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On January 28, 2016, Plaintiff John Nagle Co. commenced this action against Defendant

David Goldin asserting claims of professional negligence and breach of contract. *See* Dkt. No. 1.

Thereafter, on October 14, 2016, Defendant Goldin filed a third-party complaint against Brian

Olmstead and Douglas Rose. *See* Dkt. No. 25. After Third-Party Defendant Olmstead failed to

answer or otherwise appear in this matter, Mr. Goldin requested and the Clerk of the Court entered a certificate of default on December 8, 2016. *See* Dkt. Nos. 33-34. On December 9, 2016, Defendant Goldin moved for default judgment against Third-Party Defendant Olmstead. *See* Dkt. No. 35. Third-Party Defendant Olmstead has responded to the motion for default judgment and cross-moved to vacate the entry of default. *See* Dkt. No. 38. Moreover, Third-Party Defendant Olmstead has moved to strike Attorney Bard's affidavit and to require Barclay Damon, LLP to withdraw from this action. *See* Dkt. No. 45.

Currently before the Court are Defendant Goldin's motion for default judgment, Third-Party Defendant Olmstead's cross motion to vacate the entry of default and Olmstead's motion to strike.

## II. BACKGROUND

### A.     The Underlying Complaint

In the underlying complaint, Plaintiff John Nagle Co. (hereinafter "JNC") alleges that, in or around December 2012, it retained Defendant Goldin to represent JNC in an adversary proceeding then pending before the U.S. Bankruptcy Court in Albany, New York. *See* Dkt. No. 1 at ¶ 6. On or about December 12, 2012, Goldin entered his appearance before the Bankruptcy Court on behalf of JNC and answered the complaint filed by the Trustee of the bankruptcy estate of The Cousins Fish Market, Inc. (hereinafter the "Trustee") in the Adversary Proceeding. *See id.* at ¶ 7.

According to the complaint, on or about January 9, 2013, counsel for the Trustee served Goldin with certain discovery requests. *See id.* at ¶ 8. Under the Bankruptcy Court rules, responses to the discovery requests were due to be served no later than February 8, 2013. *See id.* at ¶ 10. Plaintiff JNC alleges that Goldin failed to notify it that the discovery requests had

3

been served and that he failed to timely respond to the discovery requests. *See id.* at ¶¶ 11-12. On or about February 15, 2013, counsel to the Trustee sent Goldin a letter stating as follows: "'If I do not receive a complete response to the discovery requests together with an appropriate motion by Friday, February 22, 2013, I will proceed with a motion for summary judgment based upon the admissions." *Id.* at ¶ 13. After speaking with counsel for the Trustee, Goldin was granted until March 1, 2013 to submit his responses. *See id.* at ¶ 14.

On or about March 1, 2013, Plaintiff JNC alleges that Goldin filed with the Bankruptcy Court responses to the interrogatories and responses to the requests for admission. *See* Dkt. No. 1 at ¶ 19. That same day, Goldin also filed ninety-seven (97) pages of documents. *See id.* at ¶ 20. Goldin failed, however, to file or serve written responses and objections to the document requests, thereby failing to place the Trustee on notice that JNC was not turning over all documents in its possession, custody, or control as requested by the Trustee's discovery demands. *See id.* at ¶¶ 21-22.

On January 15, 2013, the Bankruptcy Court entered a scheduling order, which directed that all discovery shall be completed by April 5, 2013 and that discovery requests "shall be made a sufficient number of days before this deadline to allow responses to be timely served before the cut-off." *Id.* at ¶ 25. On April 2, 2013, Goldin sent a letter to the Bankruptcy Court advising that he and the attorney for the Trustee had reached an agreement to extend the discovery deadline to April 26, 2013. *See id.* at ¶ 26. On April 19, 2013, Goldin served interrogatories, documents production requests, and requests for admission on the Trustee. *See id.* at ¶ 28. On April 22, 2013, counsel for the Trustee sent a letter to the Bankruptcy Court objecting to Goldin's April 19, 2013 discovery requests as being untimely. *See id.* at ¶ 29. According to the complaint, as a

result of Goldin's untimely submission of Plaintiff JNC's discovery requests, JNC never received

any discovery responses from the Trustee. *See id.* at ¶ 30.

Thereafter, on May 28, 2013, the Trustee filed with the Bankruptcy Court and served upon

Goldin a motion for partial summary judgment. *See* Dkt. No. 1 at ¶ 31. That same date, the

Bankruptcy Court issued an order setting a hearing on the summary judgment motion for June 19,

2013, and setting a deadline of June 12, 2013 for JNC to file an opposition to the motion. *See*

*id.* at ¶ 32. According to the complaint, at no time did Goldin advise JNC that the summary

judgment motion was filed. *See id.* at ¶ 34. Further, JNC alleges that Goldin failed to prepare

and serve a response in opposition to the Trustee's motion for summary judgment. *See id.* at ¶ 35.


Having received no communications from Goldin, JNC alleges that, on or about June 16,

2016, an attorney representing JNC in another matter checked the Bankruptcy Court docket and

learned that the summary judgment motion had been filed weeks before and that Goldin had not

responded to the motion. *See id.* at ¶ 36. JNC claims that, prior to June 16, 2016, it was not

aware that such a motion had been filed. *See id.* at ¶ 37. As such, by the time JNC was apprised

of the pendency of the summary judgment motion, JNC claims that it was time-barred from filing

a response. *See id.* at ¶ 38. As a result of Goldin's failure to respond to the Trustee's motion,

summary judgment was granted. *See id.* at ¶ 39.

According to the complaint, Goldin's actions and inaction during the scope and course of

his representation of JNC in the Bankruptcy Court have resulted in a number of adverse rulings

against JNC, including the following: (1) on June 25, 2013, the Bankruptcy Court entered an

order granting the Trustee's motion for partial summary judgment; (2) on August 14, 2013, the

Bankruptcy Court entered an order granting the Trustee's motion *in limine* to prevent JNC from

introducing any documents at trial requested by not produced in discovery, including all billing and payment records more than ninety (90) days before the bankruptcy filing; (3) on August 21, 2013, the Bankruptcy Court entered an order granting the Trustee's motion *in limine* to preclude JNC from introducing any testimony predicated on documents not produced by JNC during discovery; and (4) on August 26, 2014, the Bankruptcy Court entered judgment against JNC in the amount of $110,578.50 plus interest. *See id.* at ¶ 40(a)-(d).

In its first cause of action, JNC contends that Goldin breached his duty to JNC to exercise reasonable care, skill, and diligence on behalf of JNC attendant to the defense of the bankruptcy litigation and that, as a direct and proximate result of Goldin's professional negligence, JNC has suffered damages. *See id.* at ¶¶ 43-44. In its second cause of action, JNC alleges that Goldin breached his contract with JNC "by his inattention to the case, his failure to provide JNC with advice and counsel inherent in his agreed upon representation of JNC, and his ultimately abandoning his representation of JNC without prior notice to JNC." *Id.* at ¶¶ 46-47.

## B.     Third-Party Complaint

In his third-party complaint, Goldin named two individuals as third-party defendants, Brian Olmstead and Douglas Rose. *See* Dkt. No. 25. According to the third-party complaint, prior to retaining Goldin, JNC had retained Olmstead to represent JNC in the Adversary Proceeding. *See id.* at ¶ 15. Olmstead never filed a notice of appearance in the Adversary Proceeding on behalf of JNC, nor did he timely file an answer or otherwise move to dismiss that proceeding, despite his representation of JNC throughout. *See id.* at ¶ 17. Further, the third-party complaint alleges that a stipulation executed by Olmstead and filed with the Bankruptcy Court identifies Olmstead as JNC's "counsel" and "Attorney for Defendant" (JNC) for purposes of the Adversary Proceeding. *See id.* at ¶ 19. Despite this, Olmstead never sought admission *pro hoc*

*vice* in the Bankruptcy Court for the Northern District of New York for purposes of representing his client, JNC, in the Adversary Proceeding. *See id.* at ¶ 19.

The third-party complaint further alleges that during Olmstead's representation of JNC, the Trustee agreed to extend JNC's time to answer the complaint in the Adversary Proceeding at least seven times between November 21, 2011 and August 31, 2012. *See id.* at ¶ 20. After JNC defaulted in filing an answer to the complaint in the Adversary Proceeding and failed to appear at a pretrial conference, all of which occurred during Olmstead's representation of JNC and prior to Goldin's engagement, JNC retained Goldin as local counsel. *See id.* at ¶ 21. Upon being retained, Goldin alleges that he "promptly filed an Answer on December 12, 2012, and worked with the Bankruptcy Trustee's attorney and the Court to cure the default that Mr. Olmstead had allowed his client, JNC, to incur." *Id.*

Goldin alleges that he essentially served as "local counsel" to Olmstead on behalf of JNC in connection with the Adversary Proceeding. *See* Dkt. No. 25 at ¶ 22. Goldin claims that Olmstead was identified by JNC and its successor attorneys as the "outside general counsel for [JNC]." *Id.* at ¶ 23. As it concerns the Adversary Proceeding, Goldin alleges that Olmstead provided legal advise to both JNC and Goldin regarding the claims asserted against JNC and JNC's defenses to those claims. *See id.* at ¶ 24. During Goldin's representation of JNC, Goldin claims that Olmstead directed litigation strategy on behalf of JNC and Goldin communicated primarily with Olmstead. *See id.* Further, the third-party complaint alleges that Olmstead, among other things, prepared and drafted pleadings, prepared and drafted responses to discovery demands, entered into agreements on behalf of JNC with the Bankruptcy Trustee's attorney, and provided selective documents to Goldin for purposes of responding to the Trustee's discovery demands. *See id.* at ¶¶ 25-26.

Goldin claims that he reasonably relied on the pleadings and discovery responses prepared by Olmstead on behalf of JNC in regards to the Adversary Proceeding, including the contends and representations set forth therein. *See id.* at ¶ 27. Further, Goldin claims that he reasonably relied on Olmstead's representations to him that JNC had in its possession sufficient documentation and evidence to establish the affirmative defenses set forth in the pleadings and papers prepared by Goldin on behalf of JNC. *See id.* at ¶ 28.

On March 1, 2013, JNC filed discovery responses to the Trustee's discovery demands, which were prepared by Olmstead. *See* Dkt. No. 25 at ¶ 29. JNC's discovery responses indicated that "[JNC] is not withholding from production any document that [it] is presently able to supply and any further responsive pleadings discovered later will be produced." *Id.* at ¶ 30.

On March 28, 2013, the Trustee filed a motion for partial summary judgment in the Adversary Proceeding. *See id.* at ¶ 31. According to Goldin, on June 17, 2013, Robert Nagle, Vice President of Operations of JNC, submitted a handwritten letter to the Bankruptcy Court stating that JNC was opposing the motion filed by the Trustee. *See id.* at ¶ 32. In his June 17, 2013 correspondence, Goldin claims that he was effectively dismissed from further representing JNC. *See id.* at ¶ 33. In fact, Goldin claims that Nagle "advised the Court that the attorney-client relationship had broken down, and further stated: 'I need to defend my company + myself.'" *Id.* at ¶ 34.

On June 20, 2013, the Bankruptcy Judge presiding over the Adversary Proceeding, the Honorable Robert E. Littlefield, held a telephonic hearing in response to Nagle's letter opposing the Trustee's motion for partial summary judgment. *See id.* at ¶ 35. This hearing was attended by the attorney for the Trustee (Christian Dribusch), as well as Nagle, Olmstead, and Goldin, who was instructed by Judge Littlefield to appear. *See id.* at ¶ 36. According to Goldin, Douglas Rose

was formally substituted as counsel for JNC immediately after the June 20, 2013 conference. *See id.* at ¶ 37. Moreover, Goldin claims that, during the conference, Judge Littlefield specifically asked JNC and Olmstead whether they required additional time to respond to the Trustee's motion and to conduct further discovery in the Adversary Proceeding. *See id.* at ¶ 38. Olmstead, "responding on behalf of and as an agent for his client, JNC, advised Judge Littlefield that JNC did not require additional time to respond to the aforesaid motion, and that discovery in the Adversary Proceeding was complete." *Id.* at ¶ 39.

According to Goldin, JNC had an opportunity to oppose the Trustee's motion for partial summary judgment and conduct additional discovery but for Olmstead's response that JNC did not require additional time to respond to that motion and that discovery was complete. *See id.* at ¶ 40. As such, Goldin claims that, "insofar as JNC alleges in the First-Party Action that it was caused to incur damages as a result of the Bankruptcy Trustee's Motion for Partial Summary Judgment being granted and/or its inability to conduct further discovery in the Adversary Proceeding, JNC would not have been allegedly prejudiced nor have incurred those alleged damages but for the negligence of Mr. Olmstead." *Id.* at ¶ 41.

On June 25, 2013, the Bankruptcy Court entered an order granting the Trustee's motion for partial summary judgment. *See* Dkt. No. 25 at ¶ 42. Although it is unclear whether Mr. Rose was actually present for the June 20, 2013 conference, Goldin contends that, if Rose did in fact appear at the conference, he failed to advise the Bankruptcy Court that JNC required addition time to respond to the motion or that additional time was required to conduct further discovery. *See id.* at ¶¶ 44-46. Accordingly, insofar as the complaint alleges that damages were caused as a result of the Trustee's motion for summary judgment being granted and its inability to conduct further discovery in the Adversary Proceeding, JNC would not have incurred those alleged damages but

for the negligence, malpractice, and want of care of "substituted counsel," *i.e.*, Mr. Rose. *See id.* at ¶ 47.

On July 18, 2013, Rose attempted to forward to the Trustee's attorney additional discovery items, which were rejected since Rose had not obtained permission to re-open discovery. *See* Dkt. No. 25 at ¶¶ 49-50. Thereafter, the Trustee filed a motion *in limine* objecting to the use at trial of the discovery that Rose sought to provide in JNC's July 18, 2013 response. *See id.* at ¶ 51. On August 8, 2013, the Bankruptcy Court granted the Trustee's motion. *See id.* at ¶ 52. According to Goldin, JNC would not have been precluded from utilizing the undisclosed documents at the trial of the Adversary Proceeding had Olmstead provided him with these documents during discovery or had Olmstead or Rose requested that the Court re-open discovery. *See id.* at ¶¶ 53-54. Further, at trial, Robert Nagle was permitted to testify to matters upon which he demonstrated personal knowledge, but was otherwise precluded from testifying on matters predicated on his review of undisclosed documents and conversations with undisclosed witnesses. *See id.* at ¶¶ 60-61.

A trial in the Adversary Proceeding was conducted on August 22, 2013. *See id.* at ¶ 62. According to the third-party complaint, JNC, on the advise of their attorneys, elected not to introduce any testimonial evidence at the trial of the Adversary Proceeding, and otherwise failed to call any witnesses in support of JNC's affirmative defenses at that trial. *See id.* at ¶ 63. On August 20, 2014, the Bankruptcy Court rendered its decision denying JNC's affirmative defenses and judgment was entered against JNC in the amount of $110,578.50 plus interest. *See id.* at ¶¶ 75-76.

### III. DISCUSSION

**A.    Motion to vacate entry of default**

The court may set aside an entry of default for good cause shown. *See* Fed. R. Civ. P. 55(c). While vacating entry of default is in the discretion of the district court, there is a "'preference for resolving disputes on the merits.'" *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Defaults generally are disfavored and are reserved for rare occasions. *See Enron Oil Corp.*, 10 F.3d at 96. Accordingly, all doubts must be resolved in favor of the party seeking relief from the default in order to ensure that, to the extent possible, disputes are resolved on their merits. *See Powerserve Int'l, Inc.*, 239 F.3d at 514 (citation omitted).

Where there has been a certificate of default, but no default judgment, the court decides the motion to vacate the entry of default pursuant to Fed. R. Civ. P. 55(c), which is more lenient than the standard to set aside a default judgment under Fed. R. Civ. P. 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). Despite the different standards, the same "good cause" factors are applied in Rule 55(c) and Rule 60(b) motions. *See Enron Oil Corp.*, 10 F.3d at 96 ("Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment . . . because the concepts of finality and litigation repose are more deeply implicated in the latter action") (internal citation omitted).

"When determining whether there is 'good cause' to vacate entry of default under Fed. R. Civ. P. 55(c), a district court must consider three factors: (1) the willfulness of the default; (2) the existence of a meritorious defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be granted." *Peoples v. Fisher*, 299 F.R.D. 56, 59 (W.D.N.Y. 2014) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001)). "'[N]o single factor is dispositive.'" *Id.* (citation omitted); *see also Wagstaff–El v. Carlton Press Co.*, 913 F.2d 56, 57

(2d Cir. 1990) (holding that the district court did not abuse its discretion by vacating a default judgment despite a finding of willfulness, because the defaulting party had a meritorious defense and the plaintiff would not be prejudiced if the default was vacated). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted). "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* "Good cause" should be construed generously. *See id.* "While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277.

### 1. Willfulness

The Second Circuit has stated that willfulness is "more than merely negligent or careless" conduct, *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998), but will be found "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained," *id.* For example, "[a] default is deemed willful where a defendant simply ignores the complaint without action." *Circuito Cerrado, Inc. v. LV Foods, Inc.*, 296 F.R.D. 122, 126 (E.D.N.Y. 2013) (internal citations and quotation marks omitted). "Thus, 'where a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the court, such neglect is inexcusable.'" *Arista Records, Inc. v. Musemeci*, No. 03CV4465, 2007 WL 3124545, *4 (E.D.N.Y. Sept. 18, 2007) (quoting *Yan v. Bocar*, No. 04 Civ. 4194, 2005 WL 3005338, *13 (S.D.N.Y. Sept. 8, 2005)); *see also Kauhsen v. Aventura Motors, Inc.*, No. 09-cv-4114, 2010 WL 2301289, *4 (E.D.N.Y. June 7, 2010) (noting that "[w]illfulness includes conduct that is 'not

satisfactorily explained'") (internal citations and quotation marks omitted); *Domond v. Great Am. Rec., Inc.*, 116 F. Supp. 2d 368, 374 (E.D.N.Y. 2000) (noting that "willfulness may be inferred where a party's conduct was egregious and not adequately explained"); *Frost Belt Int'l Recording Enters., Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 136 (S.D.N.Y. 1990) ("[U]tter failure to explain the default effectively precludes a finding of excusable neglect").

In the present matter, Olmstead was served with the third-party complaint on October 18, 2016. *See* Dkt. No. 31. According to Olmstead, that same day, he had to accompany his wife to the hospital for a scheduled pre-admission examination. *See* Dkt. No. 38 at 2. Thereafter, on October 19, 2016, Olmstead's wife was admitted to the hospital for "major surgery" and was released on October 21, 2016. *See id.* Olmstead's wife was bedridden for nearly a month and Olmstead's time was consumed with caring for her. *See id.* at 2.

Moreover, Olmstead provides that he is seventy-seven years old and has several serious health problems, including emphysema, borderline congestive heart failure, and Type II Diabetes. *See id.* For more than the past decade, his sole income has been Social Security. *See id.* Although he still maintains an active registration in Massachusetts to practice law, he advises that he has not received any money from legal work since he began receiving Social Security. *See id.* Olmstead claims that he keeps his registration up to date so that he can occasionally help family and friends with legal matters without charging a fee. *See id.* Moreover, he claims that he is appearing in this action *pro se* since he does not carry malpractice insurance now that he does not earn income from legal work. *See id.*

In mid-November of 2016, once his wife's condition had stabilized, Olmstead claims that he was finally able to attend to this matter. *See id.* at 3. Since he had not received the original complaint or answer, he had no knowledge of the underlying allegations. *See id.* Further, he

claims that since he was never the attorney of record for JNC in the Adversary Proceeding, he had

no client files or records from that action "and virtually no knowledge of what had occurred." *Id.*

As such, Olmstead alleges that he was on Robert Nagle to provide information and assistance in

order to knowledgeably reply to the third-party complaint. *See id.* at 3. Initially, Olmstead

claims that Robert Nagle was supportive and indicated that the information he needed would be

forthcoming. *See id.* However, when Robert Nagle had still failed to provide the information by

December 6, 2016, Olmstead spent the next two weeks reviewing emails from the previous six

years, "which resulted in approximately 900 pages to be examined." *Id.* at 4.

Additionally, on November 11, 2016, Olmstead claims that he first contacted his co-

defendant in this third-party action, Douglas Rose. *See* Dkt. No. 38 at 9. Thereafter, Olmstead

continued discussing this case with Robert Nagle, seeking assistance and information. *See id.* at

10. Although some assistance was provided initially, eventually the attorney for JNC contacted

Olmstead to inform him that he would not be providing him with advise and that Olmstead should

refrain from discussing this matter with JNC. *See id.* at 12.

Contrary to Goldin's arguments, Olmstead's conduct was at most negligent and careless,

which is insufficient to demonstrate willfulness. In *Division 1181 Amalgamated Transit Union*

*N.Y. Emp. Pension Fund v. R & C Transit, Inc.*, ___ F.R.D. ___, 2017 WL 1450599 (E.D.N.Y.

Apr. 22, 2017), the plaintiff argued that the defendant's conduct that led to the entry of default

was willful where it did not retain an attorney for one month after being served and by not

responding to the complaint or attempting to respond to the complaint until two months after

retaining counsel. *See id.* at *2. The court disagreed and noted that counsel for the defendant had

been in contact with the plaintiff's counsel since he was retained on July 18, 2016 and was doing

research into whether a third-party complaint should be brought against a state agency. *See id.*

The court also noted that, as soon as counsel completed his research, he filed a notice of claim against the state agency on September 15, 2016 and he notified the plaintiff's counsel that his client's defense would be that the state agency was responsible for the monies owed.  *See id.* Finally, the court noted that the defendant had difficulty finding an attorney experienced in ERISA litigation.  *See id.* at *3.  Although the court acknowledged that counsel for the defendant should have requested an extension of time to file a responsive pleading upon being retained, it found that the conduct did not demonstrate evidence of willfulness.  *See id.*

Here, Olmstead satisfactorily explained his initial reason for the delay and, upon the recovery of his wife, he began to prepare his defense of this case.  Upon receipt of the motion for default judgment, Olmstead immediately responded and has continued to actively participate in this litigation.  Although it was unquestionably careless for him to fail to contact Golden's counsel or the Court to seek an extension of time to respond to the third-party complaint, the Court finds that he has satisfactorily explained his conduct.  *See New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005).

### 2. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage.  'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.'"  *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).  Whether a party has presented a meritorious defense is "measured not by whether there is a likelihood that it will carry the day," but whether the stated defense would "if proven at trial constitute a complete defense."  *Enron*, 10 F.3d at 98.

In the present matter, Olmstead has presented a meritorious defense, *i.e.*, he was not the attorney for JNC in the Adversary Proceeding. The third-party complaint alleges that Olmstead's legal malpractice was the cause of JNC's damages in the first party action. If Olmstead is able to prove that he did not represent JNC during the Adversary Proceeding and that any damages JNC suffered was the result of Goldin or Rose's conduct, he will have established a complete defense.

Goldin argues that the Court should deny Olmstead's motion because he has failed to produce any evidence in support of his claims. *See* Dkt. No. 41-20 at 12-14. Rather, Goldin contends that Olmstead has provided nothing more than conclusory assertions, that are contradicted by evidence he has provided. *See id.* Although Olmstead has submitted only his own affidavit in support of his motion to vacate the entry of default, the affidavit is sufficient at this time. In his affidavit, Olmstead provides quotations from emails that provide support for his claim that he was not counsel for JNC in the Adversary Proceeding. Moreover, in explaining his initial delay in responding to the third-party complaint, Olmstead discussed the fact that the documents needed for him to respond were in the possession of JNC and Goldin because he never maintained a client file relating to the Adversary Proceeding. As such, it would be difficult for him to produce such evidence if, as he claims, he never had it in his possession. Additionally, the Second Circuit has stated that, "[a]lthough in an answer general denials are enough to raise a meritorious defense, the moving party on a motion to reopen the default must support its general denials with some underlying facts." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187. Here, Olmstead has provided considerably more than mere general or conclusory denials in his affidavit in support of his motion to vacate the default.

Finally, the Court notes that this motion to vacate is brought under Rule 55(c), which is a less rigorous standard than a motion to vacate a default judgment under Rule 60(b). As such, it is

appropriate to apply the factors less rigorously "because the concepts of finality and litigations repose are" less deeply implicated. *See Enron Oil Corp.*, 10 F.3d at 96 (citation omitted).

Accordingly, the Court finds that this factor favors granting Olmstead's motion to vacate the entry of default.

### 3. Prejudice

Goldin contends that he will suffer prejudice if the Court vacate's the default. Specifically, Goldin argues that Olmstead's affidavit demonstrates "just how far he will go in an effort to promote a counterfactual version of events, and one that is diametrically inconsistent with the evidence. His reference to conversations with JNC's principals further supports the inference that he is attempting to collude with JNC for purposes of establishing some sort of defense to the third-party action, regardless of whether he has to make up facts to support his position." Dkt. No. 41-20 at 21. Further, Goldin argues that vacating the default at this stage of the litigation would cause significant expense and undue prejudice to Goldin as it would require him to essentially re-litigate the case from the beginning. *See id.* "This, coupled with the fact that Mr. Olmstead has already infected this action with the specter of fraud and misrepresentation, will only cause additional prejudice to Mr. Goldin if the default is vacated." *Id.*

Delay, standing alone, does not establish prejudice warranting the denial of a motion to vacate a default. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (citations omitted). Rather, the Second Circuit has stated "it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (quoting 10 C. Wright, A. Miller and M. Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2699 at 536–37 (1983)).

The Court disagrees that Goldin will be prejudiced if the Court vacates the entry of default. Goldin will still be required to proceed with this case regardless of whether Olmstead is permitted to defend the counterclaim asserted against him. In fact, based on the third-party complaint, much of Goldin's defense of this litigation will be focused on the roles played by Olmstead and Rose in the underlying bankruptcy proceeding. Moreover, the third-party complaint was served on October 18, 2016, Goldin moved for default judgment on December 9, 2016, and Olmstead responded to the motion and moved to vacate the entry of default on December 23, 2016. As such, this is not a case in which a significant amount of time elapsed. *See United States v. Chesir*, 526 Fed. Appx. 60, 63 (2d Cir. 2013) (holding that the plaintiff was prejudiced where the defendant "indisputably waited to appear in these proceedings until 42 months after service of the complaint, 26 months after the clerk entered his default, and 8 months after entry of the default judgment").

Moreover, contrary to Goldin's assertions, discovery has not progressed to the point where he would have to re-litigate a significant portion of this case. In fact, Rose filed his answer to the third-party complaint on May 2, 2017 and the discovery deadline has been extended until December 29, 2017. *See* Dkt. No. 62.

Additionally, the Court finds unpersuasive Goldin's arguments that Olmstead's conversations with JNC's principals demonstrate that he is attempting to collude with them. Nothing in the record suggests that Olmstead continued to communicate with JNC's principals after receiving correspondence from JNC's attorney instructing that they will not be coordinating with him and that his clients should not be discussing this matter with him. *See* Dkt. No. 38 at 12.

Based on the foregoing, the Court finds that Goldin will not be sufficiently prejudiced to warrant denying the motion to vacate the entry of default. Accordingly, Olmstead's motion to vacate is granted and Goldin's motion for default judgment is denied.

**B.** **Motion to Strike**

Olmstead asks the Court to strike Attorney Jonathan Bard's affidavit submitted in support of the motion for default judgment. *See* Dkt. No. 45. Further, Olmstead asks the Court to require Barclay Damon, LLP to withdraw from this action. *See id.* Although somewhat difficult to understand, Olmstead appears to be arguing that Attorney Bard has made himself a witness in this case through assertions made in his affidavit. *See id.* at 8 (arguing that, by inaccurately construing the evidence in his affidavit, Attorney Bard is engaged in "the direct manufacturing of 'evidence on disputed matters' that is prohibited by Rule 3.7(a)"). Further, Olmstead appears to be arguing that by relying on the facts that are favorable to his client and ignoring facts that are favorable to him, Attorney Bard has inaccurately portrayed the facts and violated the spirit of Rule 7(a). *See id.* at 9-10. Olmstead further notes Attorney Bard's opinion that his wife's surgery and flare up of Olmstead's heart condition were insufficient to justify vacating the default. *See id.* at 11. Olmstead contends that these opinions by an attorney are "prohibited and provides a further basis for striking the affidavit to show it had no effect upon the actions of the Court." *Id.* at 11-12.

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Since disqualification motions interfere with a party's right to counsel of its choice and are often made for tactical reasons, they are "viewed with disfavor," *A.V. By Versace,*

*Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001) (citation omitted), and the party seeking disqualification must meet a "heavy burden of proof in order to prevail," *Gormin v. Hubregsen*, No. 08 Civ. 7674, 2009 WL 508269, *2 (S.D.N.Y. Feb. 27, 2009) (citation and internal quotation marks omitted). "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). Nonetheless, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975) (citation omitted); *accord CQS ABS Master Fund Ltd. v. MBIA Inc.*, No. 12 Civ. 6840, 2013 WL 3270322, *8 (S.D.N.Y. June 24, 2013); *see also United States v. Oberoi*, 331 F.3d 44, 51 (2d Cir. 2003) (noting that the "'public's interest in the outcome [of litigation] is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case'") (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973)).

While federal courts look to state disciplinary rules when considering motions for disqualification, "such rules need not be rigidly applied as they merely provide general guidance." *Mori v. Saito*, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). Even a violation of disciplinary rules "may not warrant disqualification." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (citation omitted). Rather, "[t]he disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72-73 (2d Cir. 1990) (citations omitted). In exercising this power, courts "balance a client's right freely to choose his counsel against the need to maintain the highest

standards of the profession." *Hempstead Video, Inc.*, 409 F.3d at 132 (citations and internal quotation marks omitted).

Rule 3.7(a) of New York's Rules of Professional Conduct addresses the situation where an attorney may be called as a witness:

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
> >
> > (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client;
> >
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> >
> > (5) the testimony is authorized by the tribunal.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0. Previously, New York adhered to the Model Code of Professional Responsibility, which similarly provided that "[a] lawyer shall not act . . . as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client. . . ." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.21 (repealed 2009).[1]

---

[1] While New York revised its Rules of Professional Conduct on April 1, 2009, courts have continued to apply case law decided under the former advocate-witness rule because the changes made to that rule were "stylistic, rather than substantive." *Acker v. Wilger*, No. 12 Civ. 3620, 2013 WL 1285435, *1 n.1 (S.D.N.Y. Mar. 29, 2013) (citing *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009)).

These rules, commonly referred to as "advocate-witness" rules, are based upon concerns that:

> (1) the lawyer will appear to vouch for his own credibility, (2) the lawyer's testimony will put opposing counsel in a difficult position when he has to vigorously cross-examine his lawyer-adversary and seek to impeach his credibility, and (3) there may be an implication that the testifying attorney may be distorting the truth as a result of bias in favor of his client.

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004) (citation omitted).  Additionally, "when one individual assumes the role of both advocate and witness it may so blur the line between argument and evidence that the jury's ability to find facts is undermined." *Id.* (citation, internal quotation marks, and alterations omitted). "'Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions' based on the witness-advocate rule." *Dolenec v. Pressler & Pressler L.L.P.*, No. 12-cv-5500, 2014 WL 6632942, *3 (S.D.N.Y. Nov. 24, 2014) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).

In the present matter, the Court finds that Olmstead's motion to strike Attorney Bard's affidavit and to disqualify Barclay Damon, LLP must be denied.  The factual recitation contained in Attorney Bard's affidavit was based on evidence disclosed as part of this case and through the underlying Adversary Proceeding.  *See* Dkt. No. 41 at ¶¶ 6, 14-46.  This evidence included email exchanges, correspondence, and the discovery responses from the Adversary Proceeding.  *See id.* The affidavit was simply a vehicle to present admissible evidence relevant to the pending motion. *See Osuna v. Gov't Employees Ins. Co.*, No. 11–CV–3631, 2014 WL 1515563, *5 (E.D.N.Y. Apr. 17, 2014) (quoting *Degelman Indus. Ltd. v. Pro–Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 WL 6752565, *3 (W.D.N.Y. Dec. 23, 2011)).  Further, it is to be expected that there will be some degree of advocacy in attorney affidavits and that they will not rest exclusively on

personal knowledge.  *See Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-cv-6346, 2011 WL 6752565, *3 (W.D.N.Y. Dec. 23, 2011) (citation omitted).  Additionally, the affidavit at issue is not "being presented to a jury, and the Court can 'draw its own conclusions based on th[e] evidence, not based upon an attorney's characterization of it.'"  *Gasser v. Infanti Int'l, Inc.*, No. 03-cv-6413, 2008 WL 2876531, *7 (E.D.N.Y. July 23, 2008) (quotation omitted); *see also Osuna*, 2014 WL 1515563, at *5.  Finally, the Court finds that Olmstead has presented no reason to preclude Barclay Damon, LLP from continuing in its representation of Goldin.[2]

Based on the foregoing, the Court denies Olmstead's motion to strike Attorney Bard's affidavit and to disqualify Barclay Damon, LLP.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that David Goldin's motion for default judgment (Dkt. No. 35) is **DENIED**; and the Court further

**ORDERS** that Brian Olmstead's cross-motion to vacate the Clerk's entry of default (Dkt. No. 38) is **GRANTED**; and the Court further

**ORDERS** that Olmstead's motion to strike Attorney Bard's affidavit and to require Barclay Damon, LLP to withdraw from this action (Dkt. No. 45) is **DENIED**; and the Court further

---

[2] Goldin asks the Court to strike Olmstead's affidavit and sanction him pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* Dkt. No. 48-1 at 10-16.  Although the Court does believe that Olmstead's motion to strike and to disqualify was based on questionable legal grounds, the Court does not believe that Olmstead's conduct warrants the imposition of sanctions at this time.  The parties are hereby placed on notice, however, that the Court will not hesitate to impose sanctions in the future for motion practice that has no basis in law or fact or for conduct that is based in bad faith.

**ORDERS** that Third-Party Defendant Olmstead shall file his answer to the amended third-party complaint within **thirty (30) days** from the filing date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 12, 2017
       Albany, New York

Mae A. D'Agostino
U.S. District Judge